IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Carole Herbster, Alex Schap and Charles Schap, | ) ) ) |
| Plaintiffs, | ) ) | Case No. 16 CV 11555
| v. | ) ) | Honorable Joan B. Gottschall
| 3550 Condominium Association, DK Condo, A Draper and Kramer Company, | ) ) ) ) |
| Defendants. | ) |

# ORDER

Defendants, 3550 Condominium Association and DK Condo, have moved to dismiss the complaint of plaintiffs Dr. Carole Herbster ("Herbster"), her adult daughter, Alex Schap ("Alex"), and her husband Charles Schap ("Charles"), arguing that Count I, alleging a violation of 42 U.S.C §3604(f), should be dismissed because defendants offered plaintiffs a reasonable accommodation; Count II, alleging a violation of 42 U.S.C. §3604(c), should be dismissed because defendants' alleged comments were not made in connection with the sale or rental of a dwelling; and Count III, alleging a violation of 42 U.S.C. §3617, should be dismissed because defendants made a reasonable accommodation and lacked any intent to discriminate. As should be obvious, given the inherent limitations of a motion to dismiss and the inferences that must be made in favor of plaintiffs, the motion respecting Counts I and III must be denied. The motion to dismiss Count II is granted.

## Rule 12(b)(6) Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). To survive a Rule

12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

### Plaintiffs' Allegations

Due to a physical disability, Herbster uses a manual wheelchair to get around. Compl. ¶ 8, ECF No. 1. She uses a service dog, Hadi (her second dog), to help her with daily tasks like picking things up, opening doors, turning lights on and off, and getting the phone. *Id.* ¶¶ 9–10. All three plaintiffs helped to train Hadi, and all three participate in her care.[1] *Id.* ¶ 10. In 2015, Herbster and Charles bought a condominium unit in a no-dog building located at 3550 North Lakeshore Drive in Chicago. *Id.* ¶ 11. They renovated the unit for about a year before moving into it in June 2016. *Id.* Herbster brought her service dog when she visited the unit before she bought it. She also met with the building's management about her service dog at least once before she moved into the unit and sent updates on Hadi's training. *See id.* ¶¶ 12, 14.

Plaintiffs began experiencing difficulties shortly after they moved in on June 7, 2016. *See id.* ¶¶ 15–17. An attorney representing the association sent Herbster a letter dated June 17, 2016, stating that Herbster was required to provide documentation proving the existence of her

---

[1] According to the complaint, an organization specializing in training service animals trained Herbster's first service dog. Compl. ¶ 10. After her first dog passed away, plaintiffs decided to train Hadi themselves "[r]ather than wait for another dog through the same program." *Id.*

disability and the disability-related need for her accommodation. *Id.* ¶ 17. Building staff began requiring Alex to use the back entrance and freight elevator rather than the front or side entrances when Hadi was with her. *See id.* ¶¶ 19–20. Plaintiffs allege that the back entrance is less convenient and safe as is the freight elevator, which they say is not always available, is dirty, and has an unpleasant smell. *Id.* ¶ 21.

Herbster provided the association with paperwork from her doctor documenting her disability and need for Hadi. *Id.* ¶ 22. At a meeting held June 28, 2016, the association stated that it had "no issue" with Hadi. *Id.* ¶ 23. Nevertheless, it expressed concerns that other owners in the building could be scared of or allergic to dogs. *Id.* ¶ 23. It therefore proposed, and Herbster agreed to (in an effort to resolve things amicably on a trial basis), an initial set of restrictions on Charles and Alex's movements when accompanied by Hadi but not Herbster: (1) use the freight elevator except when it is occupied; (2) always leave via the back exit and never take Hadi into the lobby; and (3) do not enter the mailroom with Hadi. *Id.* ¶¶ 24–25.

This arrangement fell apart five days later on July 1, 2016, when the building's manager sent Herbster several emails in a short period of time about Alex and Hadi using the passenger elevator. *See id.* ¶ 26. Feeling that they were being monitored, Herbster and Charles told building management that they would no longer abide by the restrictions and instructed Alex to use whatever door she wished. *Id.*

Building staff continued to stop Alex and told her and Charles that they had been directed to record and report how many times they used the front or side door. *Id.* ¶ 27. Herbster's attorney sent a letter on July 28, 2016, demanding that the monitoring cease and that Charles and Alex be allowed to use whatever entrance and elevator they wished. *Id.* ¶ 28. Herbster met with the association's board on September 21, 2016, and suggested a compromise under which a

3

family member would take the next elevator if he or she became aware that a passenger was afraid of dogs. *Id.* ¶ 30. The board did not comment on the proposal. *Id.* ¶ 30.

The association sent a letter to Herbster on October 21, 2016, proposing a modified set of restrictions on Charles and Alex's movements when accompanied by Hadi. *See id.* ¶¶ 31–32. As proposed, Charles and Alex are restricted to the back entrance and freight elevator from 7 a.m. to 7 p.m.; they can also use the side entrance after 7 p.m. *See id.* At no time may they use the front entrance, and they may use the passenger elevator only when the freight elevator is unavailable. *See id.* When using the passenger elevator, Charles and Alex must ask any other passengers' permission to bring Hadi onto the elevator and wait for the next elevator if anyone says no. *Id.*; *see also* Letter, ECF No. 1 Ex. E.

### **Count I**

In Count I, plaintiffs allege that although defendants purported to offer them an accommodation, the accommodation was woefully inadequate. While Herbster, the plaintiff with a disability, is permitted to be anywhere in the condo building in which plaintiffs live with her service dog, Hadi, defendants placed restrictions on Herbster's family members, Charles and Alex, when they were training or caring for Hadi (such as taking her out) in the absence of Herbster. Specifically, defendants refused to allow Charles and Alex, when caring for Hadi in the absence of Herbster, to use the front or side entrances of the building; to use the passenger elevator when the service elevator was available; and to use the passenger elevator only when it was empty or when its passengers consented to Hadi's presence.

Count I of the complaint relies on the Fair Housing Amendments Act of 1988 ("FHA") 42 U.S.C. §3604(f). Section 3604(f) requires the plaintiffs to show discrimination in the sale or rental of, or to otherwise make unavailable or deny, a dwelling to a buyer or renter because of the

4

handicap of the buyer or renter or a person associated with the buyer or renter or to discriminate against such person or persons "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. §3604(f). Discrimination is defined as, among other things, "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." §3604(f)(3)(B). In order to make out a prima facie case for failure to accommodate, "the plaintiff must show that: (1) she suffers from a disability or is associated with someone with a disability; (2) defendants know of the disability or reasonably should be expected to know of it; (3) an accommodation is necessary to give the plaintiff an equal opportunity to use and enjoy the dwelling; and (4) the defendants refused to make a reasonable accommodation." *Stevens v. Hollywood Towers & Condo. Ass'n*, 836 F. Supp. 2d 800, 808 (N.D. Ill. 2011) (citing *Roseborough v. Cottonwood Apartments*, No. 94 C 3708, 1996 WL 490717, at *2 (N.D. Ill. Aug. 26, 1996)). A reasonable accommodation is an accommodation that does not impose an undue hardship on the entity making the accommodation and does not undermine the law's purpose. *Id.* (citing *United States v. Vill. of Marshall*, 787 F. Supp. 872, 878 (W.D. Wis. 1991)). The landlord is not required to do everything possible. *Id.* (citing *Clabault v. Shodeen Mgmt.*, No. 05 C 5482, 2006 WL 1371460, at *2 (N.D. Ill. May 15, 2006)). Rather, the court should undertake a cost-benefit analysis to determine what accommodation is reasonable. *Id.* (citation omitted). The plaintiff bears the burden to show that the accommodation she seeks is reasonable, and if she does so, the defense must come forward with evidence of unreasonableness or undue hardship that that accommodation would cause. *Id.* (citing *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002)).

Defendants, relying on *Stevens* (which also deals with the issue of accommodating a service dog in a no-dog condominium building), ask the court to find as a matter of law that their proffered accommodations were reasonable. In *Stevens*, defendants told plaintiffs that they could not have the dog in the common areas of the building, were restricted to certain entrances when with the animal, and were required to keep the dog in a container when in the common areas of the building. *See id.* at 806–07. Plaintiffs protested, arguing that the plaintiff with a disability could not physically manage a carrier and that the service doors, to which the plaintiffs were restricted, did not provide adequate access for various reasons. *See id.* 807.

Recognizing that a building may impose appropriate rules and regulations to lessen the impact of a service animal in a no-pet building, the court observed that the difficult issue in such a case is "where to draw the line." *Id.* at 809. "[T]the only realistic issue was whether defendants' restrictions on the entrances and exits were reasonable." The court observed that this was "a thin thread" on which to hang a case, *id.* at 810, but concluded that the issue could not be decided without a more complete factual record. *Id.* at 809–810. "The question of whether an accommodation is reasonable is a question of fact 'determined by a close examination of the particular circumstances.'" *Id.* (quoting *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 896 (7th Cir. 1996).

S*tevens*' conclusion that disputes about the reasonableness of a proposed accommodation can rarely be decided on a record devoid of facts is applicable here. On the bare record at the motion to dismiss stage, the court has no basis for making the assumptions the defendants rely on, specifically, that the restrictions imposed on Alex and Charles are reasonable because they are "the barest possible limits." Mem. Supp. Mot. to Dismiss 9, ECF No. 9. Just as examples of the factual issues that bear on the question of whether the accommodations proposed by

defendants gave plaintiffs "full enjoyment of the premises," or "equal opportunity to use and enjoy [the] dwelling," the court would have to understand how often Herbster needs the assistance of Alex and Charles in caring for Hadi, how often the service elevator is in use, how often the passenger elevator is in use, and how frequently, if it is frequently in use, building tenants object to Hadi's presence in the elevator. The key question, of how inconvenient these "accommodations" make it for plaintiffs to use and enjoy their dwelling, cannot be assessed on this record. Defendants' contention that their accommodation is reasonable as a matter of law because no restrictions were placed on Herbster when she was with Hadi is not the law. Unless the restrictions placed on the family members are themselves reasonable (an issue which cannot be evaluated on this record), Herbster would be compelled to take care of the dog herself, something which might well be an unreasonable demand given her disability. But even this issue cannot be evaluated on this record.[2]

The court need not wade into the legal thicket posed by the parties of the tension, if any, between §3604(f) and the reasonable accommodation rules. Once the factual record is developed, and the court can assess whether the restrictions placed on Herbster's family members make sense or do not, it will be possible to tell whether the requirements of §3604(f) have been complied with. The discrimination rules which apply to §3604(f) and the reasonable accommodation rules do not exist in isolation of one another, as §3604(f)(3) makes clear. *See Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014); *Hintz v. Chase*, No. 17-cv-02198-JCS, 2017 WL 3421979, at *3 (N.D. Cal. Aug. 9, 2017).

The issue raised by defendants cannot be decided as a matter of law. The motion to dismiss Count I is denied.

---

[2] Because the court cannot evaluate the extent to which, if any, Herbster's disability makes her dependent on the assistance of Charles and Alex, defendants' insistence that they have placed no restrictions on Herbster is debatable on this record.

7

**Count II**

In Count II, plaintiffs complain that defendants, intentionally, willfully and/or in reckless disregard of plaintiffs' rights, made discriminatory statements to plaintiffs in violation of 42 U.S.C. §3604(c), telling them that they needed to be discreet in order to be allowed to keep a service animal, that the plaintiffs' service animal would encourage emotional support animals in the building, that Herbster's family members did not "look disabled," a circumstance which would encourage other residents to keep emotional support animals, and that defendants published discriminatory rules and regulations aimed at people with service animals. Defendants move to dismiss on the grounds that 42 U.S.C. §3604(c) applies only to statements regarding the purchase or rental of a dwelling, and plaintiffs already owned their condominium unit when the alleged statements were made. Plaintiffs cite various regulations which they contend support their view that §3604(c) applies as well to post-acquisition statements and cite in support the Seventh Circuit's opinion in *Bloch v. Frischholz*, 587 F.3d 771 (7th Cir. 2009) (en banc). [3]

Defendants are largely correct. Cases dealing explicitly with §3604(c) make clear that it reaches only statements made in connection with the sale or rental of a dwelling. *See. e.g.*, *Jancik v. Dep't of Hous. & Urban Dev.*, 44 F.3d 553, 556–57 (7th Cir. 1995); *Davis v. Fenton*, 26 F. Supp. 3d 727, 741 (N.D. Ill. 2014); *Walker v. McCoy*, Nos. 10-C-192, 11-C-388, 2012 WL 1191470, at *4 (E.D. Wis. Apr. 10, 2012); *Krieman v. Crystal Lake Apartments Ltd. P'ship*, No. 05 C 0348, 2006 WL 1519320, *8 (N.D. Ill. May 31, 2006).

---

[3] As far as this court is aware, when binding Seventh Circuit precedent conflicts with an administrative regulation, it is the Seventh Circuit authority, not the regulation, which this court is obligated to follow. Plaintiffs have asked the court to defer to certain regulations, but they have provided no argument or authority suggesting that the regulation, and not the circuit precedent, is binding on this court. Indeed, they seem unaware that there is any conflict. On a related subject, defendants' argument in their reply brief that this court is bound to follow the decision of another district court in this circuit is simply wrong. *See, e.g.*, *TMF Tool Co., Inc. v. Muller*, 913 F.2d 1185, 1191 (7th Cir. 1990) ("District judges in this circuit must not treat decisions by other district judges, in this and a fortiori in other circuits, as controlling, unless of course the doctrine of res judicata or of collateral estoppel applies." (quoting *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987)) (alteration omitted)).

Plaintiffs' selective citations from *Bloch* ignore the holding of the case, namely, that §3604(a) (what was at issue in *Bloch*) may reach post-acquisition discriminatory conduct but only in two limited circumstances. One is when the post-acquisition conduct "makes a dwelling unavailable to the owner or tenant, somewhat like a constructive eviction." *Bloch*, 587 F.3d at 776 (citing *Evans v. Tubbe*, 657 F.2d 661, 662–63 & n.3 (5th Cir. Unit A 1981)). "Availability, not simply habitability, is the right that §3604(a) protects." *Id.* at 777. *Bloch* held that a prohibition of mezuzot (religious symbols which observant Jews are required to place on the exterior of their entrance doorposts) could actually make the defendant condominium unavailable to observant Jews, but the evidence was insufficient to demonstrate that the prohibition made the unit unavailable to plaintiffs, who resisted the rule and never moved out.

The second circumstance recognized by *Bloch* in which post-acquisition conduct could form the basis for a cause of action under §3604(b), the section the court was considering, was where the post-acquisition conduct of which the plaintiffs complained is based on a rule promulgated pursuant to specific agreements to which plaintiffs were required to bind themselves at the time of acquisition of their unit. In *Bloch*, as a condition of the purchase of their unit, the plaintiffs had been required to agree to the condominium's declaration, which gave the Board of Managers various powers, among them the power to adopt rules and regulations. Pursuant to this power, the Board promulgated a rule prohibiting the posting of signs on unit doors. Based on this rule, the Association began removing and confiscating mezuzot. Accordingly, "because the Blochs purchased dwellings subject to the condition that the Condo Association can enact rules that restrict the buyer's rights in the future, §3604(b) prohibits the Association from discriminating against the Blochs through its enforcement of the rules, even facially neutral rules." *Bloch*, 587 F.3d at 780.

Because the plaintiffs have not directed the court's attention to any cases that interpret §3604(c) to include post-acquisition conduct beyond that described in *Bloch*, and because the cases the court has reviewed indicate that §3604(c) is limited to discriminatory conduct in connection with purchases and rentals, the court concludes that the Seventh Circuit's interpretation of the purchase and rental requirement, as articulated in *Bloch*, represents the greatest reach of §3604(c).

Count II lists a number of allegedly discriminatory statements but fails to indicate *when* they were allegedly made. Based on the complaint, however, the statements of which plaintiffs complain appear to have been made almost a month *after* they moved into the building, specifically, on June 28, 2016. *See* Compl. ¶23 (indicating that the statements that form the basis for Count II were made on June 28, 2016, 21 days after plaintiffs moved into the building).

Plaintiffs have alleged nothing that approaches a constructive eviction. While Count II states, in conclusory fashion, that defendants "published a policy in their rules and regulations that discriminates against people with service animals," plaintiffs leave the court to guess at what they are referring to, when everything explicitly specified in Count II appears to have occurred after plaintiffs moved into the building. Compl. ¶ 42. Therefore, at least on this record, the court cannot see how Seventh Circuit law supports a finding that Count II states a cause of action.

If plaintiffs believe they can do a better job of alleging an adequate connection to their acquisition of their unit, they can certainly attempt to do so by amending. *See* Fed. R. Civ. P. 15(a)(2). As pleaded, however, Count II fails to state a cause of action for a violation of §3604(c) and is dismissed.

**Count III**

Count III is brought under 42 U.S.C. §3617 and alleges that defendants violated this section of the Fair Housing Act when they "(1) told Dr. Herbster she could not have the dog in the building after they knew about her disability and service animal for the year between when the family purchased the unit and moved in, and (2) told Charles and Alex they could not walk the dog out the front or side entrance of the building or use the passenger elevator with the dog." Compl. ¶ 46. Count III is focused on conduct of the defendants largely prior to the time plaintiffs moved into the building ("for the year between when the family purchased the unit and moved in").

Defendants move to dismiss on two grounds, neither of which can possibly prevail at the motion to dismiss stage: that they offered plaintiffs a reasonable accommodation and were not motivated by a desire to discriminate. Defendants add that §3617 claims require a "high standard of egregiousness," citing *Krieman*, 2006 WL 1519320, at *10, a case decided, not surprisingly, on summary judgment.

For the reasons stated in connection with Count I, the court finds the question of whether defendants offered a reasonable accommodation unsuitable for resolution at the motion to dismiss stage. If, as is alleged, defendants knew of Herbster's disability and told her she could not have her service animal in the building, a finder of fact could certainly find the conduct egregious. And with respect to the limitations placed on Charles and Alex, until the court knows a great deal more about how accommodating the offered accommodation was in practice, it cannot assess whether it was or was not a good faith attempt to work out a resolution. The issue of motivation is particularly unsuited for determination at the motion to dismiss stage, when all well-pleaded facts must be construed in plaintiffs' favor.

11

## **CONCLUSION**

For the reasons stated herein, the Motion to Dismiss (ECF No. 8) Counts I and III is denied. The Motion to Dismiss Count II is granted. A status hearing is set for October 11, 2017 at 9:30 AM.


Dated: September 25, 2017 /s/
Joan B. Gottschall
United States District Judge