**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Carole Herbster, Alex Schap, and
Charles Schap,

                    Plaintiffs,

v.

3550 Condominium Association; DK Condo,
A Draper and Kramer Company,

                    Defendants.

Case No.:16-CV-11555

## DEFENDANTS' ANSWER TO PLAINTIFFS' AMENDED COMPLAINT

Defendants, 3550 CONDOMINIUM ASSOCIATION and DK CONDO, A DRAPER AND KRAMER COMPANY (collectively, "Defendants"), by their undersigned attorneys, state as follows for their Answer to Plaintiffs' Amended Complaint:

## INTRODUCTION

1.      Carole Herbster lives at 3550 North Lake Shore Drive, a condominium building, with her husband, Charles, and daughter, Alex (collectively, "Plaintiffs" or the "Family"). Dr. Herbster has a disability and uses a wheelchair for mobility. She also uses a service animal, Hadi, to assist her with the tasks of daily living. Charles and Alex assist Dr. Herbster with Hadi's care and training.

**ANSWER:**    **Defendants admit that Carole Herbster lives at 3550 North Lake Shore Drive, a condominium building, with her husband, Charles, and daughter, Alex (collectively, "Plaintiffs" or the "Family"). Defendants admit that Dr. Herbster has a disability and uses a wheelchair for mobility. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations that Carole Herbster uses a service animal, Hadi, to**

1

2557835v.1

assist her with the tasks of daily living or that Charles and Alex assist Dr. Herbster with Hadi's care and training.

2.      Dr. Herbster's building does not allow dogs.  Upon moving in, the Defendants 3550 Condominium Association and DK Condos (collectively, "Defendants") told Dr. Herbster she was not allowed to have a service animal.  Eventually, Defendants agreed to allow Dr. Herbster to keep her service animal, but insisted that when Charles or Alex were with the dog, they could only use the back entrance and freight elevator of the building.  Defendants stated this was necessary to discourage the presence of other assistance animals in the building.  Defendants' comments to the family as well as their restrictions on Charles' and Alex's use of the building violate the federal Fair Housing Act.

**ANSWER:**   **Defendants admit that Dr. Herbster's building does not allow dogs, except for service animals allowed pursuant to a proper request. Defendants admit that, upon moving in and prior to learning of Dr. Herbster's disability and alleged need for a service animal, and prior to receiving any certification or paperwork regarding the same, Defendants told Dr. Herbster that she was not allowed to have a dog in the building. Defendants deny that they told Dr. Herbster that she could not have a service animal. Defendants admit that they agreed to allow Dr. Herbster to keep her service animal, but insisted that when Charles or Alex were with the dog (but not with Dr. Herbster), they would house the back entrance and freight elevator of the building. Defendants deny the remaining allegations contained in Paragraph 2.**

## PARTIES

3.      Plaintiff Carole Herbster ("Dr. Herbster") lives at 3550 North Lake Shore Drive, Unit 702, Chicago, Illinois 60657 ("subject property").  She has a disability.  Dr. Herbster lives at

2

2557835v.1

the subject property with her daughter, Plaintiff Alex Schap ("Alex"), who is 21 years old, and her husband, Plaintiff Charles Schap ("Charles").

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the allegation that Alex is 21 years old, but admit the remaining allegations contained in Paragraph 3.**

4. Defendant 3550 Condominium Association (the "Association") is the condominium association for the subject property. The Association is an Illinois Corporation.

**ANSWER:** **Defendants admit the allegations contained in Paragraph 4.**

5. Defendant DK Condo, a Draper and Kramer Company ("DK Condo"), is the property management company for the subject property. DK Condo is an Illinois Corporation.

**ANSWER:** **Defendants admit the allegations contained in Paragraph 5.**

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and 42 U.S.C. § 3613(a). Plaintiffs' claims for declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201-02 and 42 U.S.C. § 3613(c)(1).

**ANSWER:** **Defendants object to Paragraph 6 on the basis that it is a legal conclusion and not a statement of fact. Notwithstanding and subject to said objection, Defendants admit the allegations contained in Paragraph 6.**

7. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because Defendants reside there and because a substantial part of the events or omissions giving rise to Plaintiffs' claims arose there.

3

**ANSWER:** **Defendants object to Paragraph 7 on the basis that it is a legal conclusion and not a statement of fact. Notwithstanding and subject to said objection, Defendants admit the allegations contained in Paragraph 7.**

## STATEMENT OF FACTS

### Service Animal Background

8. Dr. Herbster has lived in her condominium building since June 2016. She lives with her daughter, Alex, and her husband, Charles. Dr. Herbster has a physical disability and uses a manual wheelchair for mobility.

**ANSWER:** **Defendants admit the allegations contained in Paragraph 8 upon information and belief.**

9. Due to her disability, Dr. Herbster experiences pain from overuse of her shoulders and arms. She has difficulty using her arms to pick up objects, stabilize her chair, open doors, turn lights on and off, open hard-to-open drawers, and retrieve the phone. About seven years ago, Dr. Herbster got her first service dog to assist her with these and similar tasks. Her service dog is necessary to enable her to live independently.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9.**

10. Dr. Herbster's first service dog passed away in August 2015. That dog was from an organization that helps train service animals. As part of getting her first service animal, Dr. Herbster and her dog received extensive training to learn how to work together. After that first dog passed away, rather than wait for another dog through the same program, Dr. Herbster opted on her own to train her next dog, Hadi, with the assistance of Charles and Alex. All three Plaintiffs participate in the training of and care for the dog.

2557835v.1

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10.**

Purchasing the Unit

11. The property's Declaration of Condominium Ownership requires all owners to comply with the by-laws, rules, and regulations set forth by the Association. *see* Declaration of Condominium Ownership and By-Laws 3550 Condominium Association, p. 10, *attached as* Exhibit A.

**ANSWER:** **Defendants state that the Declaration of Condominium Ownership is a written document which speaks for itself and deny any allegations in Paragraph 11 contrary thereto.**

12. The Association's By-Laws give the Board of Directors of the Association the power to "adopt rules and regulations with written notice thereof to all Unit Owners, governing the administration, management, operation and use of the Property and Common Elements, and to amend such rules and regulations from time to time." By-Laws Article II, Section 8(e), Ex. A at 20. Pursuant to this authority, the Association instituted an assistance animal policy.

**ANSWER:** **Defendants state that the Association's By-Laws are a written document which speaks for itself and deny any allegations in Paragraph 12 contrary thereto. Answering further, Defendants further state that they have authority to institute rules and regulations pursuant to the Association By-Laws and also per the Illinois Condominium Property Act.**

13. The Association's assistance animal policy states the following: "DOGS ARE NOT PERMITTED IN THE BUILDING UNDER ANY CIRCUMSTANCES WITH **THE EXCEPTION OF SEEING EYE DOGS OR OTHER TRAINED ANIMAL FOR A**

5

**PHYSICALLY CHALLENGED PERSON.**" [Capitalization and bold in original]. 3550 Condominium Association Rules and Regulations, *attached as* Exhibit B.

> **ANSWER:** **Defendants state that the Exhibit B is a written document which speaks for itself and deny any allegations in Paragraph 13 contrary thereto.**

14. Dr. Herbster and her husband purchased their unit in 2015, approximately a year before they moved in. Before they bought the unit, Dr. Herbster read the Association's Rules and Regulations, to review its service animal policy.

> **ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations that Dr. Herbster read the Association's Rules and Regulations prior to buying the unit. Defendants admit the remaining allegations contained in Paragraph 14.**

15. After reviewing the policy, Dr. Herbster went to the management office and met with Assistant Manager Veronica Camacho. She told Ms. Camacho about her service animal. Ms. Camacho raised no objection to the animal. Dr. Herbster's service animal accompanied her when her family visited the unit before purchasing it, and when they returned to close on the unit. During the year between when Plaintiffs purchased the unit and when they moved in, they frequently communicated with Property Manager Jim Quinett ("Mr. Quinett") and Assistant Property Manager Laura Guzman ("Ms. Guzman") regarding renovation of and other issues with the condominium unit. During the course of this year after her first service animal passed away Dr. Herbster would update Ms. Guzman on her progress with Hadi.

> **ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that Dr. Herbster reviewed the policy prior to going to the management office and meeting with Assistant Manager Veronica Camacho. Defendants**

6

2557835v.1

deny that Dr. Herbster told Ms. Camacho about her service animal and that Ms. Camacho raised no objection to the animal. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that Dr. Herbster's service animal accompanied her when her family visited the unit before purchasing it, and when they returned to close on the unit. Defendants admit that during the year between when Plaintiffs purchased the unit and when they moved in, they frequently communicated with Property Manager Jim Quinett ("Mr. Quinett") and Assistant Property Manager Laura Guzman ("Ms. Guzman") regarding renovation of and other issues with the condominium unit. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that during the course of this year after her first service animal passed away Dr. Herbster would update Ms. Guzman on her progress with Hadi.

Moving into the Unit

16.     About a month before the move, Dr. Herbster injured her arm.  As a result, Alex and Charles have assumed a more prominent role training and caring for Hadi.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16.

17.     On June 1, 2016, Dr. Herbster contacted Ms. Guzman to ask if she would alert the building employees about her service dog, so they would not interfere with the dog in the building. She made this request because, during previous visits to the building, maintenance personnel had stopped Dr. Herbster when she was with Hadi and told her she could not have the dog in the building.  Ms. Guzman told Dr. Herbster she would need to provide a doctor letter to support her need for the dog and get Board approval before she would be allowed to have a service animal. Dr. Herbster stated via e-mail that the building had never said anything about a doctor note or

7

Board approval before, even though they had been in communication that whole year. She did not receive a response.

**ANSWER:** **Defendants admit that on June 1, 2016, Dr. Herbster contacted Ms. Guzman to ask if she would alert the building employees about her service dog. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the reason that Dr. Herbster contacted Ms. Guzman. Defendants admit that that Ms. Guzman told Dr. Herbster she would need to provide a doctor letter to support her need for the dog and get Board approval. Defendants admit that Dr. Herbster stated via e-mail that the building had never said anything about a doctor note or Board approval before.**

18.    Dr. Herbster and her family moved in on June 7, 2016. One time, within the first few days after they moved, Alex took Hadi out to relieve herself and returned shaking and close to tears. She told her mother that another tenant, who later was identified as the Board President, Fran Mills ("Ms. Mills"), yelled at her. Ms. Mills told Alex the subject property was a no-dog building, and asked Alex if management knew anything about the dog. Since this encounter, Alex has been scared to take Hadi out for fear of future confrontations.

**ANSWER:** **Defendants admit that Plaintiffs moved in to 3550 N. Lake Shore Drive on June 7, 2016. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that one time Alex, after taking Hadi out, returned shaking and close to tears. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that Alex told her mother that another tenant yelled at her. Defendants admit that Ms. Mills told Alex the subject property was a no-dog building, but deny that Ms. Mills "yelled" at Alex. Defendants lack knowledge or information sufficient to form a belief**

8

**as to the truth of the allegation that Alex has been scared to take Hadi out for fear of future confrontations.**

19.     On June 17, 2016, Dr. Herbster received an e-mail from Ms. Guzman that stated: "The front desk staff told me that yesterday you inquired about allowing your dog in the lobby. The rules and regulations state that no leashed or unleashed pet is permitted in the lobby, so the answer is no." E-mail from Laura Guzman to Carole Herbster (June 17, 2016), attached as Exhibit C. Dr. Herbster wrote via e-mail: "I sent the copy of the law last week and your rules and regs allow it. I never asked permission. I do know that one front desk person scowls at me so she may have asked. The bldg. needs to familiarize themselves." Ex. C.

     **ANSWER:     Defendants admit the allegations contained in Paragraph 19.**

20.     At the end of that same day, counsel for the Association sent a letter to Dr. Herbster titled "Emotional Support Animal Request for Unit 702." The letter directed that Dr. Herbster either "comply with the Association's no dog requirement or make a properly documented request for a reasonable accommodation." The letter requested that Dr. Herbster provide documentation of her disability and the disability-related need for the accommodation to the building's no pets policy. It stated that "[u]ntil such information is provided, you are not allowed to maintain a dog in the building and any attempt to do so will be considered a deliberate violation of the Declaration." Letter from Matthew J. Goldberg to Dr. Herbster and Mr. Schap (June 17, 2016), *attached as* Exhibit D.

     **ANSWER:     Defendants admit that counsel for the Association sent a letter to Dr. Herbster titled "Emotional Support Animal Request for Unit 702", directing Dr. Herbster to "comply with the Association's no dog requirement or make a properly documented request for a reasonable accommodation." Defendants admit that the letter**

9

requested that Dr. Herbster provide disability-related information if she wished to receive an accommodation. Defendants deny any remaining allegations contained in Paragraph 20 and state that the letter speaks for itself.

21.     Dr. Herbster immediately called counsel for the Association. She was concerned it would take some time to get a doctor letter documenting her disability and, in the meantime, she needed Hadi's assistance. She emphasized to the Association's counsel that she could not get rid of the dog — indeed, she said to ban Hadi would be like taking her wheelchair away.

**ANSWER:     Defendants admit that Dr. Herbster called counsel for the Association and at that time explained that her dog was not a support animal, but a service dog. Defendants deny that Dr. Herbster emphasized to the Association's counsel that she could not get rid of the dog and further state that upon learning that Dr. Herbster's dog was a service animal, he advised her that she need not provide disability related information, but discussed that reasonable accommodations would have to be agreed upon regarding where her family could walk the dog. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations that Dr. Herbster was concerned it would take some time to get a doctor letter documenting her disability and that she needed Hadi's assistance in the meantime. Defendants deny any remaining allegations contained in Paragraph 21.**

<u>Condominium Association Restricts Family's Path[1]</u>

22.     The condominium building faces Lake Shore Drive and is bordered on the north by Addison Street and on the south by Brompton Street. There are three possible entrances/exits the family can use when walking the dog. There is a front lobby entrance, which faces east onto Lake Shore Drive, which is well-lit, and has a driveway. There are several major bus routes that stop at

---

[1] To the extent that the headings in Plaintiffs' Complaint constitute factual allegations, Defendants deny all headings.

the bus stop directly in front of this exit. There is also a side entrance on the southeast side of the building, which exits onto Brompton, near the intersection of Brompton and Lake Shore Drive. There is less street lighting on Brompton, which is a side street, and it is more desolate. Finally, there is a back entrance near the receiving room of the building, which also exits onto Brompton near the southwest corner of the block, closer to the intersection on Brompton and Pine Grove Avenue. The building has two elevators: a freight elevator and passenger elevator.

**ANSWER:** **Defendants admit that the condominium building faces Lake Shore Drive and is bordered on the north by Addison Street and on the south by Brompton Street. Defendants admit that there are three possible entrances/exits. Defendants admit that there is a front lobby entrance, which faces east onto Lake Shore Drive, which is well-lit, and has a driveway. Defendants admit that there are several major bus routes that stop at the bus stop directly in front of this exit. Defendants admit that there is also a side entrance on the southeast side of the building, which exits onto Brompton, near the intersection of Brompton and Lake Shore Drive. Defendants admit that there is less street lighting on Brompton, which is a side street, but deny that there is a material difference and deny that it is more desolate. Defendants admit that there is a back entrance near the receiving room of the building, which also exits onto Brompton. Defendants deny that the back entrance is located near the southwest corner of the block, but admit that it is slightly closer to the intersection of Brompton and Pine Grove Avenue than the side entrance is. Defendants deny that the building has two elevators, as the building has three passenger elevators and one freight elevator.**

23. After the family received the letter of June 17, 2016 from the attorney for the Association, whenever Alex tried to enter or exit the building through the side or lobby entrance

11

or use the passenger elevator, the doorman demanded she use the freight elevator and back entrance instead.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 23.**

24. The freight elevator is problematic for several reasons. First, it is often used for moves or deliveries, and is not always available. Second, it is dirty and has a strong odor. In addition, the route out the back entrance is out of the way for the family. Going out the back entrance is in the opposite direction of the bus routes that stop directly in front of the subject property. In addition, the back entrance is to a side street, unlike the lobby entrance, which leads to well-lit Lake Shore Drive.

**ANSWER:** **Defendants deny that the freight elevator is problematic. Defendants admit that the freight elevator is sometimes used for moves or deliveries and when it is in use for such reasons, it is not always immediately available. Defendants deny that it is dirty and has a strong odor and further state that it has recently been renovated. Defendants deny that the route out the back entrance causes any material inconvenience to Plaintiffs, but admit that, literally speaking, the back entrance is farther from the bus stop on Lake Shore Drive than the front entrance. Defendants admit that the back entrance is to a side street, unlike the lobby entrance, which leads to Lake Shore Drive. Defendants deny any material difference in the lighting between the front and sides of the building. Defendants deny any remaining allegations contained in Paragraph 24.**

<u>Meetings between the Family and Defendants</u>

25. Due to the building's frequent statements to Alex about where Hadi was allowed, Dr. Herbster and Charles set up a meeting with Mr. Quinett, Ms. Mills, and Board Vice President Dr. Raphael Juss. Ahead of the meeting, Dr. Herbster submitted documentation from her doctor

12

regarding her disability and need for the accommodation to the no dog policy.

**ANSWER:** **Defendants admit that a meeting was arranged between Dr. Herbster, Charles Herbster, Mr. Quinett, Ms. Mills, and Board Vice President Dr. Raphael Juss to attempt to reach an agreement as to reasonable accommodations for walking the dog in the building. Defendants admit that ahead of the meeting, Dr. Herbster submitted documentation from her doctor regarding her disability and need for the accommodation to the no dog policy. Defendants deny the remaining allegations contained in Paragraph 22.**

26.    The meeting occurred on June 28, 2016. At the meeting, the Association stated that although it had "no issue" with Dr. Herbster's service animal, it was concerned that if other residents saw Hadi around the building, it would lead to an increase in emotional support animals in the building. The Association stated that because Alex does not "look disabled," other residents who observed her with the dog would assume the dog was needed for emotional support, and this would encourage more residents to claim they need emotional support animals. The Association stated there was already one other owner with an emotional support animal, and that if owners saw Hadi, this would "make it worse." The Association also stated that some residents may be allergic or fearful of dogs. It alleged a particular owner had a "breakdown" from seeing a dog near the front of the building, and expressed concern that this owner would have a similar reaction upon seeing Hadi.

**ANSWER:** **Defendants admit that the meeting occurred on June 28, 2016. Defendants admit that at the meeting, the Association stated that it had "no issue" with Dr. Herbster's service animal. Defendants admit that the Association voiced concerns about the reaction of other residents in the no-pet building. Defendants deny that the Association stated there was already one other owner with an emotional support animal and that if owners saw**

13

Hadi, this would "make it worse." Defendants admit that the Association stated that some residents are allergic and fearful of dogs. Defendants admit that the Association stated that one unit owner had a breakdown from seeing a dog near the front of the building. Defendants admit that the Association expressed concern that this owner would have a similar reaction upon seeing Hadi. Defendants deny the remaining allegations contained in Paragraph 26.

27.     Because of these concerns, the Association told Dr. Herbster that her family would be allowed to keep the dog as long as they were "discreet."  The Board presented the following conditions in order for Hadi to remain in the building: (1) Alex and Charles must use the freight elevator to take the dog out, and only use the passenger elevator if the freight elevator were occupied; (2) Alex and Charles must not take the dog into the lobby or side entrance, and must exit by way of the back entrance instead; and (3) Alex and Charles must not go into the mail room with the dog.

**ANSWER:**     **Defendants admit that, in an effort to balance the interests of its other residents along with the interests of Plaintiffs, the Association granted Plaintiffs the following accommodation: (1) Alex and Charles should use the freight elevator to take the dog out, and only use the passenger elevator if the freight elevator was occupied; (2) Alex and Charles could not take the dog into the lobby or through the side entrance, and should exit by way of the back entrance instead; (3) Alex and Charles should not go into the mail room with the dog; and (4) Dr. Herbster could go anywhere in the building with the dog. Defendants deny any remaining allegations contained in Paragraph 27.**

28.     Although Dr. Herbster knew these conditions violated the federal Fair Housing Act, she agreed to them on a trial basis in an attempt to resolve the issue and avoid further dispute.  To this end, Dr. Herbster asked that if staff observed Alex and Hadi take a route other than the back

14

entrance and freight elevator, that staff contact Dr. Hebster rather than Alex. This would enable Dr. Herbster to talk to Alex about the issue and avoid a confrontation between Alex and staff.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that Dr. Herbster knew these conditions violated the federal Fair Housing Act, but deny that the aforementioned accommodations violated any state or federal law. Defendants admit that Dr. Herbster agreed to the aforementioned accommodations, but deny that it was "on a trial basis." Defendants admit that Dr. Herbster asked that if staff observed Alex and Hadi take a route other than the back entrance and freight elevator, that staff contact Dr. Herbster rather than Alex. Defendants admit that this would allow Dr. Herbster to talk to Alex about the issue and avoid communication between Alex and staff. Defendants deny any remaining allegations contained in Paragraph 28.**

29. A few days later, on July 1, 2016, Dr. Herbster received several e-mails within a few minutes from Mr. Quinett that stated that Alex had used the passenger elevator instead of the freight elevator when walking Hadi. Dr. Herbster was extremely upset about receiving so many e-mails within a short period of time, because she felt her family was being monitored. Charles and Dr. Herbster went to the management office immediately, and Charles told Mr. Quinett the Family would no longer follow the agreement. Later that day, Dr. Herbster and Charles told Alex to exit and enter the building through whichever door she wished when walking Hadi.

**ANSWER:** **Defendants admit that a few days later, on July 1, 2016, Dr. Herbster received two emails from Mr. Quinett, one of which was incomplete and sent in error, that stated that Alex had used the passenger elevator instead of the freight elevator when walking Hadi. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that Dr. Herbster was extremely upset or the allegation regarding why she was**

15

upset. **Defendants admit that Charles and Dr. Herbster went to the management office immediately, and Charles told Mr. Quinnett the family would no longer follow the agreement that had been reached. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that later that day, Dr. Herbster and Charles told Alex to exit and enter the building through whichever door she wished when walking Hadi, but admit that Charles and Alex have disregarded the prior agreement and continue to walk Hadi wherever they wish in the building.**

30.    Alex continued to be stopped when she walked the dog out the lobby or side door. In fact, several doormen told Charles and Dr. Herbster they were directed by Defendants to record how often the Family went out the front lobby or side door with Hadi and report that information to Mr. Quinett.

**ANSWER:    Defendants deny that Alex continued to be stopped when she walked the dog out the lobby or side door. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that several doormen told Charles and Dr. Herbster they were directed by Defendants to record how often the family went out the front lobby or side door with Hadi and report that information to Mr. Quinett.**

31.    On July 27, 2016, Dr. Herbster, through her attorney, sent a letter to the Association to ask that it: (a) cease harassing Dr. Herbster about her service dog; (b) allow Dr. Herbster's daughter and husband, who help train the service dog, to use the passenger elevator and any entrance or exit they choose while training and walking the service dog; (c) allow Dr. Herbster to explain her need for a service dog in writing to all other tenants and building staff so they are aware and fully informed; and (d) allow Dr. Herbster to install a clear kick plate on the exterior base of her unit door to prevent damage to the door from Dr. Herbster's wheelchair. Letter from Mary

16

2557835v.1

Rosenberg, Staff Attorney, to Matt Goldberg (July 27, 2016), *attached as* Exhibit E.

> **ANSWER:** **Defendants admit the allegations contained in Paragraph 31.**

32.     On August 8, 2016, the Association responded in writing that it would allow Dr. Herbster to install the kick plate, and it proposed that the parties get together to discuss her reasonable accommodation requests.

> **ANSWER:** **Defendants admit the allegations contained in Paragraph 32.**

33.     On September 21, 2016, Dr. Herbster met with the Board expecting to discuss her accommodation requests. However, the Board did not discuss Dr. Herbster's requests. Rather, the Board and its Attorney questioned Dr. Herbster regarding her need for dog, and refused to answer questions posed by Dr. Herbster. During the meeting, Dr. Herbster suggested a compromise wherein if a family member became aware that a resident on the passenger elevator was afraid of dogs, the family member would take the next elevator. The Board did not comment on Dr. Herbster's suggestion. The Attorney for the Condominium Association indicated the Board would vote on the issue at the next Board meeting, in October 2016.

> **ANSWER:** **Defendants admit that on September 21, 2016, Dr. Herbster met with the Board. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that Dr. Herbster expected to discuss her accommodation requests. Defendants deny that the Board did not discuss Dr. Herbster's accommodation requests and deny that it and its attorney questioned Dr. Herbster regarding her need for dog and refused to answer questions posed by Dr. Herbster. Rather, the Board attempted to engage in an interactive discussion with Dr. Herbster in order to determine reasonable accommodations. Defendants admit that during the meeting, Dr. Herbster suggested that if a family member became aware that a resident on the passenger elevator was afraid of dogs, the family**

17

**member would take the next elevator. Defendants admit that the Board did not comment on Dr. Herbster's suggestion at the meeting. Defendants admit that the attorney for the Association indicated that the Board would vote on the issue at the next Board meeting, in October 2016.**

34.     On October 21, 2016 Defendants responded in writing that they would allow Charles and Alex to walk Hadi under the following conditions: (1) between the hours of 7 a.m. to 7 p.m. they must use the freight elevator and back entrance, (2) between the hours of 7 p.m. to 7 a.m. they would be allowed to use the side entrance; (3) they use the passenger elevator only when the freight elevator is unavailable; (4) if they use the passenger elevator and there is already an occupant in the elevator, they must ask permission of the occupant to ride the elevator, and if the occupant were to refuse, they must wait for the next elevator; and (5) the Herbster family is responsible for any damage caused by Hadi. Letter from Matthew Goldberg to Mary Rosenberg (October 21, 2016) *attached as* Exhibit F.

   **ANSWER:     Defendants admit the allegations contained in Paragraph 34.**

35.     Under this proposal, Charles and Alex cannot use the exit and route of their choice. Rather, from 7 a.m. to 7 p.m. they are obligated to use the freight elevator and back entrance, both of which are highly undesirable.  After 7 p.m., the only change is that they may use the side entrance as well.  At no time are Charles and Alex allowed to use the lobby, which they prefer, when with Hadi.  The only time Charles and Alex may use the passenger elevator is when the service elevator is unavailable, and if they do use the passenger elevator, they must affirmatively ask permission from the passengers in the elevator.

   **ANSWER:     Defendants admit that under this proposal, Charles and Alex cannot use the exit and route of their choice when they are walking the service animal without Dr.**

18

Herbster present. Defendants deny that the freight elevator and back entrance are undesirable. Defendants admit that under this proposed accommodation, after 7 p.m., Charles and Alex may use the side lobby entrance as well. Defendants admit that, under this proposed accommodation, at no time would Charles and Alex be allowed to use the front lobby when they are with the service animal but without Dr. Herbster. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that Charles and Alex prefer the lobby. Defendants deny that the only time Charles and Alex may use the passenger elevator is when the service elevator is unavailable, and if they do use the passenger elevator, they must affirmatively ask permission from the passengers in the elevator. However, Defendants admit that under the proposed accommodation, when Alex and/or Charles are with Hadi but not in the presence of Dr. Herbster, they may only use the passenger elevator when the service elevator is unavailable, and if they do use the passenger elevator under this scenario they must ask permission from any passengers in the elevator.

36.     This situation has caused damage to Plaintiffs. The family was excited to move into the building, but now they are uncomfortable. The family's comings and goings are being monitored. Even Dr. Herbster feels unsafe and uncomfortable when walking Hadi on her own. In addition, Charles and Dr. Herbster are particularly concerned for their daughter, Alex, since she has frequently been confronted by building personnel for not going out the back door. The family members are being treated as second-class citizens because of Dr. Herbster's service animal.

**ANSWER:**     Defendants deny that the situation has caused damage to Plaintiffs, that the family's comings and going are being monitored any more than any other resident of the building, that Alex has been frequently confronted by building personnel for not going out the back door, and that the family members are being treated as second-class citizens because

19

of Dr. Herbster's service animal. **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations that the family was excited to move into the building but are now uncomfortable, that Dr. Herbster feels unsafe and uncomfortable, and that Charles and Dr. Herbster are concerned for their daughter.**

## DISCRIMINATION UNDER THE FAIR HOUSING ACT

## COUNT I: DISCRIMINATORY TERMS AND CONDITIONS

37.     Plaintiffs re-allege and incorporate paragraphs #1-36 as if fully set forth herein.

**ANSWER:     Defendants re-allege and incorporate their answers to Paragraphs #1-36 as if fully set forth herein.**

38.     In 1968, Congress enacted the Fair Housing Act, prohibiting discrimination on the basis of race, gender, national origin, and religion in the provision of housing.  In 1988, through the Fair Housing Amendments Act, Congress extended the law's protections to people with disabilities.

**ANSWER:     Defendants object to Paragraph 38 on the basis that it is a legal conclusion and not a statement of fact. Notwithstanding and subject to said objection, Defendants admit only those duties imposed by law and deny any allegations in Paragraph 38 that are contrary thereto.**

39.     Under the Fair Housing Amendments Act, it is unlawful, "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a [disability] of— (A) that buyer or renter; (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter." 42 U.S.C. § 3604(f).

**ANSWER:     Defendants object to Paragraph 39 on the basis that it is a legal conclusion and not a statement of fact. Notwithstanding and subject to said objection,**

20

**Defendants admit only those duties imposed by law and deny any allegations in Paragraph 39 that are contrary thereto.**

40.     The Fair Housing Act prohibits a housing provider from "[discriminating] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a [disability] of that person; or . . . any person associated with that person."  42 U.S.C. § 3604(f).

**ANSWER:     Defendants object to Paragraph 40 on the basis that it is a legal conclusion and not a statement of fact. Notwithstanding and subject to said objection, Defendants admit only those duties imposed by law and deny any allegations in Paragraph 40 that are contrary thereto.**

41.     Defendants discriminated against Plaintiffs when they refused to allow them to use the front or side entrances, or use the passenger elevator, with the service animal.  But for Dr. Herbster and her service animal, Charles and Alex could use any entrance or elevator.  Because of their assistance with training and caring for Hadi, Charles and Alex are forced use only certain exits and the freight elevator — both of which are undesirable.  To treat Plaintiffs differently and constrict which parts of the building they are able to use because of their connection to Dr. Herbster and her service animal constitutes discriminatory terms and conditions in violation of the FHA.

**ANSWER:     Defendants deny the allegations contained in Paragraph 41.**

42.     Defendants acted intentionally, willfully, and/or in reckless disregard of Plaintiffs' rights.

**ANSWER:     Defendants deny the allegations contained in Paragraph 42.**

**COUNT II: DISCRIMINATORY STATEMENTS**

43.     Plaintiffs re-allege and incorporate paragraphs 1-42 as if fully set forth herein.

21

**ANSWER:** **Defendants re-allege and incorporate their answers to Paragraphs #1-42 as if fully set forth herein.**

41.     Under the federal Fair Housing Act, it is unlawful, "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on [disability] . . . or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).

**ANSWER:** **Defendants object to Paragraph 41 on the basis that it is a legal conclusion and not a statement of fact. Notwithstanding and subject to said objection, Defendants admit only those duties imposed by law and deny any allegations in Paragraph 41 that are contrary thereto.**

42.     Defendants' service animal policy, as published in the Rules and Regulations, is discriminatory. It states: DOGS ARE NOT PERMITTED IN THE BUILDING UNDER ANY CIRCUMSTANCES WITH **THE EXCEPTION OF SEEING EYE DOGS OR OTHER TRAINED ANIMAL FOR A PHYSICALLY CHALLENGED PERSON.** [emphasis in original]. Ex. B.

**ANSWER:** **Defendants deny that its "service animal policy" is discriminatory. Defendants further state that the Exhibit B is a written document which speaks for itself and deny any allegations in Paragraph 42 contrary thereto.**

43.     Defendants' policy violates the FHA in at least two ways. First, the Fair Housing Act allows assistance animals for any disability, not just those with physical disabilities, as long as it is necessary and reasonable for the person with a disability to enjoy his/her housing. *See Service Animals and Assistance Animals for People with Disabilities in Housing and HUD-Funded*

22

*Programs ("HUD Report")*, Washington, DC (April 25, 2013), p. 2-4. On its face, however, Defendants' assistance animal policy only allows assistance animals for people with physical disabilities. As a result, dogs that assist people with non-physical disabilities (e.g., a seizure alert dog for a person with epilepsy) are not permitted in the building.

**ANSWER:** **Defendants deny that any of their policies violate the FHA in any way. Defendants further state that the Exhibit B is a written document which speaks for itself and deny any allegations in Paragraph 43 contrary thereto. Defendants object to the allegation that the Fair Housing Act allows assistance animals for any disability, not just those with physical disabilities, as long as it is necessary and reasonable for the person with a disability to enjoy his/her housing, on the basis that it is a legal conclusion and not a statement of fact. Notwithstanding and subject to said objection, Defendants admit only those duties imposed by law and deny any allegations in Paragraph 43 that are contrary thereto. Defendants deny that dogs that assist people with non-physical disabilities (e.g., a seizure alert dog for a person with epilepsy) are not permitted in the building.**

44. Second, Defendants' policy requires an animal to be "trained," which is not required under the Fair Housing Act. *Bronk v. Ineichen*, 54 F.3d 425, 431 (7th Cir. 1995) (A dog does not need to be professional trained or certified to qualify as a service dog under the Fair Housing Act); *HUD Report* at 2 ("[f]or purposes of reasonable accommodation requests, neither the [FHA] nor Section 504 requires an assistance animal to be individually trained or certified."). This language prevents people with emotional support animals from purchasing a unit at the building because emotional support dogs are not necessarily trained.

**ANSWER:** **Defendants objection to the allegation that Defendants' policy requires an animal to be "trained," which is not required under the Fair Housing Act, on the basis**

23

that it is a legal conclusion and not a statement of fact (as evidenced by the legal citation). Defendants deny the remaining allegations contained in Paragraph 44.

45.     As part of purchasing a condominium at the building, Plaintiffs agreed to abide by Rules and Regulations promulgated by the Association, including the building's animal policy.

**ANSWER:     Defendants admit the allegations contained in Paragraph 45.**

46.     Pursuant to the authority of this facially discriminatory service animal policy, Defendants (I) stopped members of the family when they tried to walk Hadi using the front entrance or passenger elevator, (2) restricted Charles and Alex's pathways through the building when with Hadi, (3) told the Family they needed to be "discreet" in order to keep the service animal, (4) told Dr. Herbster and Charles they feared the service animal would encourage emotional support animals in the building, and (5) told Dr. Herbster and Charles that because Alex does not "look disabled," residents would be encouraged to keep emotional support animals. These statements and actions violate the federal Fair Housing Act.

**ANSWER:     Defendants deny the allegations contained in Paragraph 46.**

47.     Defendants acted intentionally, willfully, and/or in reckless disregard of Plaintiffs' rights.

**ANSWER:     Defendants deny the allegations contained in Paragraph 47.**

**COUNT III: HARASSMENT UNDER THE FAIR HOUSING ACT**

48.     Plaintiffs re-allege and incorporate paragraphs #1-47 as if fully set forth herein.

**ANSWER:     Defendants re-allege and incorporate their answers to Paragraphs 1-47 as if fully set forth herein.**

49.     Under the FHA, it is unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on

24

account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the Act]." 42 U.S.C. § 3617.

**ANSWER:** **Defendants object to Paragraph 49 on the basis that it is a legal conclusion and not a statement of fact. Notwithstanding and subject to said objection, Defendants admit only those duties imposed by law and deny any allegations contained in Paragraph 49 that are contrary thereto.**

50. Defendants violated § 3617 of the Fair Housing Act when they (1) told Dr. Herbster she could not have the dog in the building after they knew about her disability and service animal for the year between when the family purchased the unit and moved in, and (2) told Charles and Alex they could not walk the dog out the front or side entrance of the building or use the passenger elevator with the dog.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 50.**

51. Defendants acted intentionally, willfully, and/or in reckless disregard for the Plaintiffs' rights.

**ANSWER:** **Defendants deny the allegations contained in Paragraph 51.**

Respectfully Submitted,

3550 CONDOMINIUM ASSOCIATION and DK CONDO, A DRAPER AND KRAMER COMPANY

By: _____

Rebecca Rothmann
Alexander L. Reich
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
55 West Monroe Street, Suite 3800
Chicago, Illinois 60603-5016
Tel: 312.704.0550
Rebecca.rothmann@wilsonelser.com
alexander.reich@wilsonelser.com

25

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on August 15, 2018, a copy of the foregoing was served by operation of the court's electronic filing systems upon the party listed below.

      Parties may access this filing through the Court's system.

                                               Alexander L. Reich

26