IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAROLE HERBSTER, ALEX SCHAP, AND CHARLES SCHAP, <br><br> Plaintiffs, <br><br> v. <br><br> 3550 CONDOMINIUM ASSOCIATION; DK CONDO, A DRAPER AND KRAMER COMPANY, <br><br> Defendants. | Case No.:16-CV-11555 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, 3550 Condominium Association ("The Association" or "3550 LSD") and DK Condo, a Draper and Kramer Company, for their Memorandum of Law in Support of their Motion for Summary Judgment, pursuant F. Rule Civ. P. Rule 56, state as follows:

## SUMMARY OF UNDISPUTED FACTS [1]

Defendant, 3550 LSD, is a condominium building with 728 units located on the corner of North Lake Shore Drive and Brompton Street in Chicago. (SOF ¶ 1.) The Association is managed by a Board of Directors, including President, Fran Mills, and Vice President, Raphael Juss, and it contracts to DK Condo, management of its day-to-day operations. (SOF ¶¶ 2-3.) DK Condo employs a Property Manager, Jim Quinnett, and an Assistant Property Manager, Laura Jamieson (a/k/a Laura Guzman) who work at 3550 LSD. (SOF ¶ 4.)

In 2015, Plaintiff, Carole Herbster, and her husband, Plaintiff, Charles Schap, purchased a condominium unit at 3550 LSD. (SOF ¶ 5.) Herbster and Schap moved into their condominium unit in June 2016, along with their daughter, Plaintiff, Alex Schap, Alex's boyfriend, Brandon Stephens, and Carole's service dog, Hadi. (SOF ¶ 6.) Brandon Stephens walks Hadi in lieu of paying rent to Plaintiffs. (SOF ¶¶ 9.) Dr. Herbster is confined to a wheelchair. (SOF ¶ 5.) Neither Charles nor Alex have a disability. (SOF ¶ 8.) Hadi's typical schedule is to be walked twice per day - - once by Charles in the morning and another time by Brandon Stephens later in the day. (SOF ¶¶ 10, 13.) Sometimes Alex assists in taking Hadi out for a walk, and sometimes Charles takes Hadi out a second time during a day. (SOF ¶¶ 10-14.)

3550 LSD is comprised of two towers. (SOF ¶ 17.) Plaintiffs live in the south tower. (*Id.*) The south tower has its own lobby that leads directly to the front main lobby, which is shared with

---

[1] Defendants refer herein to its Rule 56.1(a)(3) Statement of Facts, filed in conjunction with its Motion for Summary Judgment, as (SOF).

the north tower. (SOF ¶ 18.) The main front lobby has a front entrance facing east onto Lake Shore Drive, and a side entrance onto Brompton. (SOF ¶ 19.) Each tower has three passenger elevators and a service elevator, which are close to each other. (SOF ¶¶ 20-21.) The service elevators were renovated in 2017. (SOF ¶¶ 21-22.) The service corridor of the south tower has a service entrance onto Brompton, which is approximately 200 feet from or less than one block west of Lake Shore Drive. (SOF ¶¶ 23-24.)

The Association's Rules and Regulations contain a no dog policy with an exception for "seeing eye dogs or other trained animal[s] for a physically challenged person." (SOF ¶ 25.) The Board has never discussed this regulation and has pretty much ignored it to the extent that since 2010, the building has been granting requests for accommodations for emotional support animals. (SOF ¶¶ 26-27, 29.) When choosing to move to 3550 LSD, it was a no-brainer for Herbster because it was obvious to her that the building was accepting of Hadi based upon its rules and regulations. (SOF ¶ 7.) There are currently approximately five emotional support animals in the building, and Plaintiffs are the first residents to have a service animal. (SOF ¶ 28.) The Association, with the advice of counsel, has implemented procedures, including documentation where necessary to demonstrate the need for the emotional support animal and limitations placed on the dog walkers (other than the person with the need for the emotional support animal) as to where they take the dogs in the building. (SOF ¶ 29-32.) Indeed, there have been complaints by residents about dogs in the building. (SOF ¶ 33.)

On or about June 7, 2016, Fran Mills and a doorman each saw Alex walking Hadi in the mailroom and in the front lobby, respectively, unaccompanied by Herbster, and told her it was a no-dog building. (SOF ¶¶ 34-37.) At this point, Mills did not know that Hadi was a service animal or that Plaintiffs moved into the building. (SOF ¶ 37-38.) There was some confusion or

2

misunderstanding as to whether Herbster could take Hadi through the front lobby and whether Hadi was a service animal or emotional support animal. (SOF ¶¶ 34, 40-41.) The misunderstanding was promptly corrected by the Association's attorney to the satisfaction of Herbster. (SOF ¶ 42.) Herbster also commended Laura Jamieson for her hard work and always being appropriate. (SOF ¶ 43.)

On or about June 28, 2016, a meeting took place with Carole, Charles, Fran Mills, Raphael Juss, and Jim Quinnett. (SOF ¶ 44.) The June 28th meeting was the first time Juss learned of Plaintiffs. (SOF¶ 39.) During the meeting, Plaintiffs agreed or "agreed to try" to adhere to the following limitations when the Schaps, who are not disabled, walk Hadi in the building unaccompanied by Herbster: they would not walk Hadi in the front lobby or the mailroom; they would use the service entrance and the service elevator (if available), and use the passenger elevator if the service elevator was not available. (SOF ¶¶ 45-46.) Carole and Charles requested that if their daughter was observed walking Hadi in an unpermitted area that they contact Carole directly and not confront Alex directly. (SOF ¶ 47.)

After Alex was observed taking Hadi in the passenger elevator (while the service elevator was available), Quinnett alerted Herbster by email on July 1, 2016. (SOF ¶ 48.) Carole and Charles were angry about Quinnett's email, and told Quinnett that they were not going to abide by the "so called agreement." (SOF ¶ 49.)

On July 27, 2016, Plaintiffs' counsel sent a letter to Defendants' counsel demanding that: (1) the Schaps use the passenger elevator and any entrance of their choosing when walking Hadi without Herbster; (2) Herbster explain in writing to all residents and staff her need for a service dog; and (3) the Board permit a kick plate to be installed on Herbster's unit door. (SOF ¶ 50; Tab B, Herbster Dep., Ex. 9.) On August 8, 2016, the Association's attorney sent a letter to Plaintiffs'

3

counsel granting their request for a kick plate, and offered for the parties to meet to review Plaintiffs' other demands. (SOF ¶ 51.) The parties met on September 21, 2016, during which the Board offered additional accommodations for the Schaps; which were rejected. (SOF ¶ 52.)

Following the parties' September 21st meeting, the Association's attorney wrote a letter to Plaintiffs' counsel dated October 21, 2016 with the following proposals as to the Schaps walking Hadi through the building without Herbster: (1) they use the service entrance and service elevator between 7:00 a.m. to 7:00 p.m. in order to address Plaintiffs' concerns of safety exiting onto Brompton at night; (2) they use the side lobby entrance between 7:00 p.m. to 7:00 a.m., which exits on to the corner of Lake Shore Drive and Brompton and is well-lit; (3) they use the passenger elevator if the service elevator is unavailable; and (4) if the passenger elevator is occupied, they ask the occupants if they are comfortable riding with Hadi and if the response is no, they wait for the next elevator. (SOF ¶ 53.) Plaintiffs take issue with the accommodations set forth in the October 21st letter because it relegates them to second class citizens where the Schaps are analogous to friends of Rosa Parks. (SOF ¶¶ 54-55, 59-60, 70-72.) However, taking the side entrance with Hadi is acceptable to Plaintiffs and Stephens. (SOF ¶¶ 66-69.) Plaintiffs also take issue with using the service entrance between 7:00 am and 7:00 pm only if it is dark earlier in the winter months. (SOF ¶¶ 56-57.) The Association has requested these limitations in order to strike a balance as to Plaintiffs' concerns and the concerns of its other residents. (SOF ¶¶ 64-65.)

In the meantime, the Schaps and Alex's live-in boyfriend, Brandon Stephens, have been walking Hadi throughout the building with no limitations being imposed. (SOF ¶¶ 73-78.) Yet, the Schaps willingly take the service elevator when doing laundry. (SOF ¶ 58.) As to Plaintiffs' concerns about the lack of socialization Hadi gets by taking the service elevator, they take Hadi

4

on walks to get socialization, and remarkably, neither the Schaps nor Stephens take Hadi to other places with elevators to get socialization in a confined space. (SOF ¶¶ 61-63.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## ARGUMENT

### I. THE SCHAP PLAINTIFFS, WHO DO NOT HAVE DISABILTIES, ARE NOT ENTITLED TO ACCOMODATIONS UNDER THE FHAA

The undisputed facts show that Defendants provided Plaintiffs with all reasonable accommodations to which they are entitled such that judgment should be entered against Plaintiffs and in favor of Defendants on Count I alleging discriminatory terms and conditions under 42 U.S.C. § 3604(f). Under the FHA, as amended by the FHAA, disabled individuals must be provided reasonable "accommodation in rules, policies, practices, or services when such accommodation may be necessary to afford [them] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). "Implicit in the text of the FHAA is the understanding that while reasonable accommodations to achieve necessary ends are required, some accommodations may not be reasonable under the circumstances and some may not be necessary to the laudable goal of inclusion." *Bronk v. Ineichen*, 54 F.3d 425, 428-429 (7th Cir. 1995).

In a FHAA accommodation claim require plaintiffs to prove: (1) they suffer from a disability or are associated with someone with a disability about which the Defendants are aware; (2) their requested accommodations are reasonable; (3) their requested accommodations are

necessary for a plaintiff with a disability to have an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make reasonable accommodations. *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 783, (7th Cir. 2002); *Stevens v. Hollywood Towers and Condo. Assn.*, 836 F.Supp.2d 800, 811 (N.D. Ill. 2011).

### A. The Accommodations Sought for the Schap Plaintiffs are Not Necessary to Provide Disabled Persons With Equal Access to the Building.

Fatal to Plaintiffs' failure to accommodate claim, is that their requested accommodations are not necessary to afford a handicap person equal opportunity to use and enjoy the dwelling. It is undisputed that Herbster has received all accommodations she requested (e.g., she is free to have her service animal accompany her anywhere on the premises, and the Building has granted her request for a kick plate for her door). (SOF ¶¶ 45, 50-51.)

A *"reasonable accommodation"* is a change, exception, or adjustment to a rule, policy, practice, or service that may be *necessary* for a person with a disability to have an equal opportunity to use and enjoy a dwelling, including public and common use spaces." Joint Statement of the U.S. Dept. of Hous. & Urban Dev. and the Dept. of Justice, Reasonable Accommodations Under the Fair Housing Act, dated May 17, 2014, pg. 6 (last accessed Aug. 8, 2019). A "housing provider can deny a request for a reasonable accommodation if the request was not made by or on behalf of a person with disability or if there is no disability-related need for the accommodation." *Id*. at pg. 7.

"In most circumstances, waiving a no-pet rule to allow a *disabled resident* the assistance of a service animal is shown to be *necessary* to provide the plaintiff an equal opportunity to use and enjoy the dwelling." *Prindable v. Ass'n of Apt. Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1247 (D. Haw. 2003) (emphasis added) (*cited by Stevens v. Hollywood Towers & Condo Ass'n*, 836 F. Supp. 2d 800, 808 (N.D. Ill. Dec. 29, 2011). Necessity of an accommodation has

6

been described by the courts as a causation inquiry. *Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006). If the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be necessary." *Id*. The FHAA links the term "necessary" to goal of "equal opportunity" limiting the duty to accommodate. *Id*. *citing* 42 U.S.C. § 3604(f)(3)(B).

It is without dispute that the Schapps do not have disabilities, and they do not require a service animal in order to use, occupy and enjoy their home. (SOF ¶ 8.) Nonetheless, Plaintiffs object to restricting their access to the service elevator and service entrance when walking Hadi unaccompanied by Herbster because *inter alia* doing so relegated them as second class citizens. (SOF ¶¶ 52-57, 59-60, 70-76.) The FHA, however, does not provide for accommodations for the non-disabled family members (e.g., the Schap Plaintiffs) of a disabled person (e.g., Carol Herbster).[2]

### B. Plaintiffs' Requested Accommodations are Not Reasonable.

A reasonable accommodation "can involve changing some rule that is generally applicable so as to make its burden less onerous on the ***handicapped individual.***" *Proviso Ass'n of Retarded Citizens v. Vill. of Westchester*, 914 F. Supp. 1555, 1562 (N.D. Ill. 1996). Nonetheless, there is no obligation to do everything humanely possible to accommodate a ***disabled person***. *Bronk*, 54 F.3d 425, 429. Rather, the reasonableness of an accommodation is assessed based on weighing the cost/burden to the defendant against the benefit to the plaintiff. *Proviso*, 914 F. Supp. at 1562.

In Count I, Plaintiffs take issue with certain limitations Defendants have unsuccessfully attempted to place on the Schaps because *inter alia* the limitation purportedly relegates them to

---

[2] Plaintiffs' claim that they need to take the passenger elevator with Hadi to socialize him does not change this conclusion, and in any event, the sincerity of this claim is belied by the fact that the Schap Plaintiffs rarely avail themselves of the various opportunities in the city to socialize Hadi in other settings. (SOF ¶¶ 61-63.)

7

second class citizens. (SOF ¶¶ 52-57, 59-60, 70-76.) Plaintiffs also expressed disdain about asking occupants already in the passenger elevator if the occupants are comfortable riding with Hadi. (SOF ¶¶ 70-72.)

In *Stevens*, plaintiff – who herself had a disability for which her doctor prescribed her an emotional support animal - sued her condominium building, which was a no-dog building, for unrestricted access with her dog. 836 F. Supp.2d at 804, 808-09. The court stated that while waiving a no-pet rule to allow a disabled resident to have a service animal was a reasonable accommodation, it may be reasonable and proper to implement appropriate rules concerning the dog's access in a no-pet building. *Id*. at 809. The court explained:

> [n]othing in the FHA precludes the imposition of appropriate rules and regulations designed to lessen the impact of housing a pet in a no-pet building . . . Some limits, of course are reasonable. After all, many residents choose to live in a no-pet building because of allergies, fear of animals, belief that such a building will have higher property values, or countless other reasons that are entitled to respect. As such, the Court agrees with Defendants that they were not required to capitulate to Plaintiffs' request for 'unrestricted access,' for the dog.

*Id.*

In *Prindable*, 304 F. Supp. at 1247, the court granted summary judgment to defendant-condominium association finding that it did not violate the FHAA by granting resident's request for a service animal with limitations that he *inter alia* use the shortest route out of the building. The court rejected defendant's argument that taking the shortest route was dangerous to his health. *Id*. at 1259. The *Stevens* court summarized the *Prindable* court's decision: "for plaintiff to succeed in his challenge to the limitations the association put on his use of the dog, the plaintiff would have to come forward with evidence that he had a disability that not only required the use of a service dog, but which also required him to take the path of his choice through the building." 836 F. Supp. 2d at 809. (internal citations omitted).

Defendants have unsuccessfully sought to impose minimal restrictions on the Schap Plaintiffs, whom are not disabled, that impact them only during the limited times they walk Carole Herbster's service dog unaccompanied by Dr. Herbster. (SOF ¶¶ 45-49, 52, 53, 64, 73-78.) Defendants, like the condominium association in *Stevens*, considered and provided alternative access routes and elevators for the Schaps to use when walking the dog without Dr. Herbster. (SOF ¶¶ 45-49, 52, 53,) If it is reasonable to impose limitations and not capitulate to Plaintiff in *Stevens*, who had a disability, then it is certainly reasonable for Defendants to impose reasonable limitations on the Schap Plaintiffs, for whom a service animal is not necessary. The Schaps have not put forth evidence to demonstrate a disability prevents them from using the service elevator, service entrance, or asking an occupant already in the passenger elevator if he or she minds riding with Hadi before getting in the passenger elevator with Hadi. Defendants' limitations were aimed at treating all residents with dogs (e.g., ESA or Hadi) the same and accounting for the rights of the residents in the no-dog building who are fearful of, allergic to, or otherwise not comfortable living among dogs. (SOF ¶¶ 64-65.) The *Stephen*s court recognized these concerns as relevant to the analysis of whether a requested accommodation is reasonable.

  C. <u>**Defendants Have Not Refused Plaintiffs Their Accommodations.**</u>

Finally, Plaintiffs cannot prove the final element of their claim where they have not refused Dr. Herbster's for a service animal, and they did not even deny the non-disabled Schap Plaintiffs from walking Hadi in the building. (SOF ¶¶ 45, 51, 53.) In fact, the Schap, and Alex's live-in boyfriend Brandon Stephens, testified they take Herbster's service animal throughout the building as they desire even when unaccompanied by Herbster. (SOF ¶¶ 73-78.)

**II. JUDGMENT ON COUNT II SHOULD BE ENTERED IN FAVOR OF DEFENDANTS BECAUSE § 3604(c) OF THE FHA APPLIES ONLY TO STATEMENTS REGARDING THE PURCHASE OR RENTAL OF A DWELLING**

In Count II, Plaintiffs allege that Defendants violated 42 U.S.C. § 3604(c) by engaging in conduct aimed at placing limitations on the Schaps taking Carole Herbster's service dog throughout the no-dog building when unaccompanied by Dr. Herbster. Section 3604(c) makes it unlawful to make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination. 42 U.S.C. § 3604(c). "Actions prohibited under § 3604(c) include using words or phrases which convey that dwellings are not available to a particular group or group of persons because of [their protected classification under the FHA] and expressing to prospective renters or any other persons a preference or a limitation on any renter because of [their protected class]." *White v. HUD*, 475 F.3d 898, 904 (7th Cir. 2007).

The Seventh Circuit has stated, "[t]he language [of Section 3604] indicates concern with activities, such as redlining, that prevent people from acquiring property. *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 328-29 (7th Cir. 2004). As such, the FHA is not concerned "with anything but *access* to housing." *Id* at 329. (emphasis in original). *See, Jancik v. Dept. of Hous. & Urban Dev*., 44 F.3d 553, 556 (7th Cir. 1995) (print advertisements and verbal statements made by landlord during the interview process indicating a preference for familial status and race considered in Section 3607(c) claim). "Statement of [discriminatory] preference is made 'with respect to the sale or rental of a dwelling' only if it is related to the decision of whether or not to sell or rent the property; a 'stray remark' wholly unrelated to the decisional process" is not actionable under § 3604(c)". *Campbell* v. Robb, 162 Fed. Appx. 460, 467 (6th Cir. 2006) (*citing Harris v. Itzhaki*, 183 F.3d 1043, 1055 (9th Cir. 1999)).

10

In *Halprin*, the Seventh Circuit affirmed dismissal of plaintiff's Section 3604 claim premised on allegedly harassing statements made by members of the association who vandalized plaintiffs' property and engaged in a campaign of harassment caused or influenced by the religion of the Jewish plaintiff. 388 F.3d at 328-29. The Seventh Circuit reasoned that where plaintiffs complained being harassed, as opposed to being prevented from acquiring property, the limited rights afforded under Section 3604 have not been violated. *Id.* at 329.

Similarly, in *Kreiman v. Crystal Lake Apartments Ltd. Partnership*, 1:05-cv-00348, 2006 WL 1519320, *5 (N.D. Ill. 2006), the court granted defendant summary judgment on plaintiff's Section 3604(c) claim premised upon statements allegedly made by a property manager calling a biracial child living with his white mother a "nigger" and "biracial boy." Judge Virginia Kendall reasoned that even assuming these allegations are true, these statements were not made "in connection with the sale or rental of a property." Judge Kendall held, "the claims against defendants for discriminatory statements are not tied to denial of access to housing, or to the sale or rental of housing generally, and therefore cannot survive summary judgment."

To prove a Section 3604(c) violation, a plaintiff must demonstrate that: (1) the defendant made the statement; (2) the statement was made with respect to the rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination against the plaintiffs on the basis of their disability. *White v. HUD*, 475 F.3d 898, 904 (7th Cir. 2007).

A.   **None of the Statements Relied Upon by Plaintiffs Were Made in Connection With Plaintiffs' Purchase of their Condominium Unit.**

All conduct relied upon by Plaintiffs in Count II occurred **after** they purchased their condominium. In support of their claim, Plaintiffs point to the Association's Rules and Regulations' exception to its no-dog policy, which is applicable to unit owners (e.g., people who already purchased units.) (SOF ¶¶ 25; Tab A, Am. Compl, ¶¶ 42-45.) Moreover, the remainder

11

of the statements and conduct relied upon by Plaintiffs in support of Count II (e.g, conduct taken by Defendants in furtherance of the challenged No Dog Policy), even if true, relate to stray remarks and conduct alleged to have occurred *after* Plaintiffs purchased and moved into their condominium unit. (Tab A, Am. Compl. ¶¶ 18, 26-27, 30, 46.) None of the alleged statements or conduct are alleged to have been made with the purpose of or in connection with Plaintiffs' acquisition of their condominium unit.

        **B.**     **The Association's No Dog Policy, Including its Exception for Service Animals, is Not Unlawful.**

Even assuming *arguendo* the exact language of the No Dog Policy in the Rules and Regulations is not consistent with the FHA, Defendants' application of the policy is compliant. Plaintiffs' allegation in this regard is belied by the fact that Carol Herbster testified that the Association's Rules influenced her decision to want to move into the building. (SOF ¶ 7.) The Board has never discussed the No-Dog Policy and has essentially ignored its verbatim language because it has been approving residents' requests for emotional support animals (e.g., a non-physical challenge) since 2010. (SOF ¶ 26.) The Rules and Regulations demonstrate the Association's stated exception for its no-dog policy to accommodate those residents, such as Carole Herbster, whom have disabilities necessitating a service animal. *Id.* Also, nothing in the Board's standard procedures for responding to requests for emotional support or service animals involves inquiring about a dog being certified or trained. (SOF ¶¶ 25, 30.)

Neither the FAA nor its accompanying regulations define a service animal. *Prindable*, *Prindable*, 304 F. Supp, 2d at 1256. The Association's language tracks the federal regulations governing the language of the Regulations governing the Americans With Disabilities Act, which provides that a service animal is "any guide dog, signal dog, or other animal individually trained to do work or perform tasks for the benefit of an individual with a disability." 28 C.F.R. § 36.104

(2002). "[M]ost animals are not equipped 'to do work or perform tasks for the benefit of an individual with a disability.' *See Bronk*, 54 F.3d at 429 n.6. There must instead be something - - evidence of individual training - - to set the service animal apart from the ordinary pet." *Prindab*le, 304 F. Supp, 2d at 1256. (internal citations omitted). Even where the primary handicap at issue is emotional as opposed to physical, "the animal at issue must be peculiarly suited to ameliorate the unique problems of the mentally disabled." *Id*. Unlike the improper jury instruction challenged in *Bronk*, the Association's rule does not require the dog training be professional or the dog be certified. 54 F.3d at 431.

Finally, Plaintiffs do not have standing to raise this issue where Dr. Herbster's need for Hadi results from a physical disability, which is explicitly provided for in the challenged No Dog Policy, and where Dr. Herbster testified that the language made her decision to purchase this condominium unit a no-brainer. *See Johnson v. Allsteel, Inc*., 259 F.3d 885, 888 (7th Cir. 2001); *Moffat v. Unicare Midwest Plan Group 31451*, 2006 U.S. Dist. LEXIS 16348 * 26 (N.D. Ill. April 5, 2006). (SOF ¶ 7.) Therefore, when viewing the record as a whole with all reasonable inferences drawn in favor of Plaintiffs, Plaintiffs have not been injured by the language of the Association's No Dog policy.

### III.  THE COURT SHOULD ENTER SUMMARY JUDGMENT ON COUNT III

In Count III, Plaintiffs claim that Defendants violated § 3617 of the FHA when they: (1) told Carol Herbster she could not have the dog in the building after they knew about her disability and service animal for the year between when the family purchased the unit and moved in, and (2) told the Schaps they could not walk the dog out the front or side entrance of the building or use the passenger elevator with the dog.

To survive summary judgment on Plaintiffs' § 3617 claim, they must establish that: (1) Plaintiffs are protected individuals under the FHA; (2) Plaintiffs were engaged in the exercise of their fair housing rights; (3) Defendants threatened, coerced, intimidated or interfered with Plaintiffs on account of their protected activity under the FHAA; and (4) Defendants were motivated by a desire to discriminate. *Stevens*, 836 F.Supp.2d at 811 (*citing Bloch v. Frischolz*, 587 F.3d 771, 783 (7th Cir. 2009); *East-Miller v. Lake County Highway Dept*. 421 F.3d 558, 563 (7th Cir. 2005).

The Seventh Circuit has held that to succeed on a § 3617 claim for interference, a plaintiff must show that the defendants were motivated by an intent to discriminate." *Bloch*, 587 F.3d at 783. (Emphasis added); *Echemendia v. Gene B. Glick Mgmt. Corp.*, 199 F. App'x 544, 547 (7th Cir. 2006) ("[t]o prevail on a claim of retaliation under § 3617 of the FHA, [the plaintiff] must show both a retaliatory motive and [the defendant's] intent to discriminate on a forbidden ground[.]").

### A. There Is No Intent to Discriminate Against Herbster.

Plaintiffs' claim as to Carole Herbster based on the fact that someone told her that she could not have a dog in the building after they already knew or should have known that she required the assistance of a service animal. (SOF ¶ 36; Ex. A, ¶ 50.) The record is void of any evidence as whom this person was that made this statement; whether this person acted at the direction of either Defendant; or whether this person's conduct was based on an intent to discriminate or a mistake. (SOF ¶ 36.)

"Interference" in the context of the Act, means something more than isolated acts of discrimination, but rather must exhibit a pattern of discrimination, invidiously motivated. *Stevens*, 836 F.Supp.2d at 811 (citing *Bloch v. Frischolz*, 587 F.3d 771, 783 (7th Cir. 2009)). Courts in this

14

district have held Section 3617 interference claims to a high standard of egregiousness. *Kreiman*, 2006 WL 1519320 at *9.

Ultimately, the record shows that Dr. Herbter was the Association's first request for a service animal, and as soon as Dr. Herbster spoke with attorney Matt Goldberg to clarify any prior confusion, she was satisfied at Mr. Goldberg's reasonableness and Defendants immediately confirmed that she had unrestricted access to all areas of the no-dog building with her service dog.

### B. The Schaps are Not Entitled to Stand in Herbster's Shoes, Yet Defendants Repeatedly Offered Them Reasonable Accommodations.

The § 3617 claim brought by the Schap Plaintiffs fails as a matter of law. *First*, as discussed above, the Schaps did not engage in any protected rights under the FHAA in seeking an accommodation consisting of having unrestricted access to 3550 LSD when walking Hadi unaccompanied by Dr. Herbster. The FHAA does not provide for accommodations to the non-disabled Schaps based upon their association with Herbster. Nonetheless, Defendants repeatedly attempted to address Plaintiffs' concerns about using alternative routes by proposing limitations, which addressed Plaintiffs' concerns while being mindful of the other residents' concerns. Plaintiffs have rejected all limitations requested and have had free reign as to where they take Hadi with no ramifications taken against them. (SOF ¶¶ 73-78.)

*Second*, the record is void of evidence from which a reasonable factfinder can conclude that Defendants acted with intent to discriminate against the Schap. Defendants acted well within their rights *Stevens* and *Prindable* (supra). Defendants exceeded their obligations by lifting restrictions ordinarily placed on family members or residents who walk an emotional support animal in the building but whom do not have a disability necessitating the dog. There is no evidence in the record that would allow a jury to infer intentional discrimination so as to sustain a claim for harassment under § 3617.

15

        Respectfully submitted.

        **3550 Condominium Association and DK Condo, a Draper and Kramer Company, Defendants**

        By: ___*/s/ Lisa Handler Ackerman*_____
                 One of their attorneys

Rebecca Rothmann
Lisa Handler Ackerman
Wilson Elser Moskowitz Edelman & Dicker LLP
55 West Monroe Street, Suite 3800
Chicago, Illinois 60603-5016
312.704.0550 p | 312.704.1522 f
rebecca.rothmann@wilsonelser.com
lisa.ackerman@wilsonelser.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2019 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record. Parties may access this filing through the Court's system.

*Rebecca M. Rothmann*

2756515v.1